# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA,
### WESTERN DIVISION

IN RE:

**TERRY JEROME HANKS and
SANDRANETTA HANKS,**                                              BK 97-72646-CMS-13

    **DEBTORS.**

**TERRY HANKS,
SANDRANETTA HANKS,**                                              AP 04-70072-CMS

    **PLAINTIFF,**

**vs.**

**SELECT PORTFOLIO SERVICING, INC.,**

    **DEFENDANT.**

<u>**MEMORANDUM OF DECISION**</u>

This matter is before the court on Terry Jerome and Sandranetta Hankses' suit to hold Select Portfolio Servicing, Inc.(SPS) in contempt of the court's July 9, 2002 discharge order after their completion of a Chapter 13 plan, (BK 97-72646-CMS-13). The court has reviewed the records of the cases, Sandranetta Hanks' testimony, and the documentary evidence; and finds that the creditor's allowed secured claim was provided for in full by the Hankses' Chapter 13 plan and was included in the discharge pursuant to 11 U.S.C. § 1328(a). The court finds judgment must be entered **IN FAVOR OF THE PLAINTIFFS**.

## FINDINGS OF FACT

On April 18, 1997, Terry Jerome and Sandranetta Hanks borrowed $14,354.03 from

1

NationsCredit Financial Services Corporation of Alabama[1]. The Hankses agreed to repay the note in 84 monthly payments of $279.01 at a contract interest rate of 15.2496%. (See Proof of Claim 6 in BK 97-72646 and Plaintiffs' Exhibit 2). The first payment was due May 18, 1997, and the last due April 18, 2004. Terry Hanks secured the loan by executing a mortgage to NationsCredit on a house his grandmother gave him at 210 19th Avenue in Tuscaloosa. The mortgage documents stated the house was not the Hankses' homestead/residence. The mortgage was recorded April 23, 1997 in the real estate title records in the Tuscaloosa County Probate Office at mortgage book 1997, at page 12119. Evidence was that the property has never been the debtors' home.

The promissory note/contract, and mortgage both listed NationsCredit at 2300 McFarland Boulevard E., Ste. 8, Tuscaloosa, Alabama 35404, as lender.

September 23, 1997, the Hankses filed a Chapter 13 bankruptcy petition (BK Doc. 1). They listed both their residence at 5707 22nd Avenue East in Tuscaloosa, and the non-homestead property on 19th Avenue as Schedule A Real Property. In their Schedule D, they listed as secured creditors NationsCredit with a $14,000.00 first mortgage on the nonresidential property ; and Temple-Inland with a $69,000.00 first mortgage on their 22nd Street home. Notice of the Chapter 13 filing was served on the creditor at its Tuscaloosa address, as listed on the matrix. The debtors estimated the 19th Avenue property was worth $18,900.00 as of the petition date.

The Chapter 13 Plan Summary filed by the debtors with their schedules and dated September 22, 1997 (BK Doc. 1) provides in II. B. the following:

II. From the payments received, the Trustee shall make disbursements as follows: ...
      B. The holder of each SECURED claim shall retain the lien securing such claim until

---

[1] The evidence indicates that NationsCredit was predecessor-in-interest to assignee Fairbanks Capital, itself predecessor-in-interest to the defendant SPS. See Plaintiffs' Exhibit 2.

2

a discharge is granted and such claim shall be paid in full with interest at a rate of 10% per annum in deferred cash payments as follows: ...

The court entered an order approving the Hankses' financial reorganization plan November 17, 1997. (BK Doc. 8) The order provided the debtors would pay Nationscredit $255.00 per month through their trustee "upon filing a properly perfected proof of claim." (Debtors Exhibit 1, AP 04-70072 and BK 97-72646 (Doc. 8)) The confirmation order further provided "secured creditors shall retain their liens securing such claim until such time as the filed and allowed claims of such creditor are paid under the terms of debtor's plan and said liens are released upon debtor's completion of the plan as confirmed or, as amended ." (BK Doc. 8) The plan proposed to pay "100% of the secured claims as determined by the Court to be secured" and 0% to unsecured creditors.

On November 21, 1997, after the confirmation order was entered, NationsCredit filed Claim No. 6 for a total "Payoff Amount" of $12,691.21.(See attachment to claim #6)  The claim had been filed by its Consumer Service Center at 405 W. Loop 820 South, Suite 110, Fort Worth, TX 76108. The claim form said the payoff amount included one-month's arrearage of $279.01.

Chapter 13 Trustee C. David Cottingham filed a motion to modify the debtors' fixed payment to NationsCredit from $255.00 to the $279.01 payment required by the loan/mortgage documents submitted with Claim 6. The trustee's motion (BK Doc. 9, filed January 23, 1998) noted the obligation would be classified as a long-term debt under 11 U.S.C. § 1322(b)(5), since the last payment was due after the last payment under the Chapter 13 plan was due.

However, the debtors filed an **OBJECTION TO MOTION TO MODIFY FIXED PAYMENT** on February 4, 1998 (BK Doc. 10) stating:

The Trustee is proposing that this debt be paid as a long term debt. The debtors' plan provided that the debt would not be a long term debt, but would be paid in full with interest

Case 04-70072-CMS    Doc 14    Filed 07/07/05    Entered 07/07/05 14:13:45    Desc Main
Document      Page 3 of 23

at ten (10%) percent through the Chapter 13 Plan at $255.00 per month.[2]

The record reflects no objection to either pleading from NationsCredit. The court held a hearing on

the motion and objection February 20, 1998.

February 26, 1998, the court entered an order modifying the debtors' plan to pay

NationsCredit out in full at the interest rate provided for in debtors' confirmed plan during the 55-

month Chapter 13 plan. (BK Doc. 13). The order stated the trustee's motion was granted in that:

> NationsCredit is granted a fixed payment of $288.60 per month for a period of 55 months,
> for a total future value of $15,872.90 (present value of $12,691.21 plus interest at 10% APR).
> The debtor's objection to Trustee's motion is withdrawn.

> The debtor's payments are increased to $227.00 per week.

No party in interest asked for rehearing or appealed the modification of the plan in the time allowed

under the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure.

The Hankses paid out their Chapter 13 plan, as amended, on July 1, 2002. (Plaintiffs' Exhibit

1, an interim statement on the account from Chapter 13 Standing Trustee C. David Cottingham).

July 9, 2002, the court entered an order discharging the Hankses of personal liability for

dischargeable prepetition debt. (BK Doc. 33). In allusion to certain Bankruptcy Code provisions,

the order stated:

> Pursuant to 11 U.S.C. § 1328(a), the debtor is discharged from all debts provided for by the
> plan or disallowed under 11 U.S.C. § 502, except any debt:

>> (a) provided for under § 1322(b)(5) and on which the last payment is due after the
>> date on which final payment under the plan was due;

---

[2] 11 U.S.C. § 1322(b)(2) provides that Chapter 13 debtors may modify the rights of
secured creditors (including some real estate mortgagees) in their plans except for " ...  a claim
secured only by a security interest in real property that is the debtor's principal residence, ..." The
real estate securing NationsCredit's claim was not the debtor's principal residence.

4

(b) in the nature of alimony to, or maintenance for, or support of a spouse, former spouse, or a child of the debtor in connection with a separation agreement, divorce decree or other order of a court of record, or property settlement agreement, as specified in 11 U.S.C. § 523(a)(5);

(c) for a student loan or educational benefit overpayment as specified in 11 U.S.C.§ 523(a)(8);

(d) for a death or personal injury caused by the debtor's unlawful operation of a motor vehicle while intoxicated from using alcohol, a drug, or another substance, as specified in 11 U.S.C. § 523(a)(9), in a case commenced on or after November 15, 1990; or

(e) for restitution included in a sentence on the debtor's conviction of a crime, in a case commenced on or after November 15, 1990; or

(f) for a fine included in a sentence on the debtor's conviction of a crime, in a case commenced on or after October 22, 1994.

Trustee Cottingham's Final Report and Account on the case was filed September 25, 2002. The trustee stated he had paid NationsCredit the $15,872.90  future value to satisfy the $12,691.21 payoff balance in Claim 6. See BK Doc. 34.

The Bankruptcy Court Clerk's Office closed BK 97-72646; and, in due course, sent the file to federal court archives. Sandranetta Hanks later testified the debtors discovered the creditor was still trying to collect on what they had thought was a satisfied mortgage in the spring of 2004.

Hanks told the court that the couple had entered a lease-purchase agreement to buy another house as their residence when a credit report showed they still owed an approximate $4,000.00 balance on the original NationsCredit debt; and that a satisfaction of the mortgage had never been recorded at the Probate Office. Apparently, the obligation had been reported to a credit reporting agency as delinquent. As a result, their purchase of the new house fell through when the delay forced the seller to find another buyer. The couple was living in the house they were attempting to purchase,

5

but had to move when the sale fell through. This was during the same week in which Mrs. Hanks was having heart surgery. Additionally, she said an adjoining property owner wished to buy the 19th Avenue house, but the sale had been stalled by the title problem.

At that point, the former debtors contacted J. Paul Whitehurst, their bankruptcy counsel. Documents in Plaintiffs' Exhibits 1 and 2 show Whitehurst then began attempting to clear Hanks' title to the 19th Avenue real estate. Both debtors' testimony and documentary evidence from the attorney's office showed months of attempts to deal with the party or entity capable of resolving the issue.

The court has deduced the following sequence of events from the record of the March 17, 2005 hearing: Whitehurst's first letter on the debtors' behalf is dated March 25, 2004, and addressed to "NationsCredit, P.O. Box 4413, Jacksonville. FL 32231".[3] The account number listed was C81432758, the account number on the original note between NationsCredit and the debtors, submitted by NationsCredit with Claim 6. As shown by Plaintiffs' Exhibit 1, the letter included copies of the confirmation order, Chapter 13 payment records, and the discharge order. It stated:

> ... On behalf of the Hanks I hereby demand that you immediately satisfy or release the mortgage. If you need any further records or assistance in this matter please contact me immediately.

Chronologically, the next communication in Exhibit 1 was a facsimile message from Whitehurst's assistant, Kristi Bardon, to the NationsCredit's "Customer Advocate Department" at 1-904-232-4607 on April 27, 2004 stating:

---

[3] The court notes that copies of documents in the debtors' exhibits are what they are. They were not verified as correct and accurate business records by the defendant; nor did any agent for the creditor swear to the veracity of their contents. The plaintiffs and their counsel identified the documents as communications they received in their attempts to have the mortgage released.

Case 04-70072-CMS    Doc 14    Filed 07/07/05    Entered 07/07/05 14:13:45    Desc Main
Document    Page 6 of 23

Please review the attached evidence (apparently the previous correspondence), and kindly satisfy Mr. & Mrs. Hanks' mortgage. Please mail them their satisfied deed and mortgage as soon as possible.

If you have any questions, or need additional information please contact us. Your prompt attention to this request is greatly appreciated.

By this point, the loan account number on the fax cover sheet had been changed to "7001661425".

The law office apparently received an unsigned letter dated May 4, 2004 from "Consumer Affairs Department" for an entity listed in the letterhead as "Fairbanks Capital Corp." at 10401 Deerwood Park Blvd. Jacksonville FL 32256" and "Loan Servicing Center" at "10401 Deerwood Park Blvd./P.O. Box 551170, Jacksonville, Florida 32256."[4] This communication also referenced the 7001661425 account number, but listed its fax as "904-232-4626." The creditor did not respond to Whitehurst's demands with a "yes" or a "no". The letter stated the following:

Fairbanks Capital Corp. Consumer Affairs Department has received your letter dated April 27, 2004, which raises issues regarding the mortgage loan referenced above.

Fairbanks recognizes the importance of providing a prompt and thorough response to the concerns addressed in the letter. Please be assured that we will contact the appropriate persons and reply to your inquiry within thirty (30) business days of your receipt of this letter.

If you you have any additional questions, please contact Walter Fudge Jr., Consumer Advocate at (866) 878-5178x27732. (emphasis added)

Documents included in Exhibit 1 show that on August 30, 2004, almost four months after Fairbanks stated they would reply with thirty business days, Bardon faxed another message to "Consumer Affairs Department" of Fairbanks Capital, this time including "**ATTENTION: Supervisor**" in the salutation. The message states:

---

[4] Trustee Cottingham's final report showed he sent $15,872.90 to Nationscredit at "P.O. Box 551170, Jacksonville, Florida 32256", the amount the creditor was due under the Hankses' plan.

Case 04-70072-CMS    Doc 14    Filed 07/07/05    Entered 07/07/05 14:13:45    Desc Main
Document    Page 7 of 23

Attached you will find our original fax to you concerning the above account, a response letter dated 5/4/04, and a log showing the dates I have attempted to follow up on this matter.

Our clients need this matter taken care of. Mr. Fudge's letter stated we would hear from him in 30 days. I have called him 5 times with no return call.

Your attention to this matter would be greatly appreciated.

The log referred to states the following:

6/21/04 – spoke to our client he has not received his Satisfaction of Mortgage. Call to Mr. Fudge at Fairbanks Capital – left message for him to return my call.

6/28/04 – left message for Mr. Fudge to return my call re Terry Hanks

7/15/04 – left message for Mr. Fudge to return my call re Terry Hanks

8/25/04 – 8:30 a.m. CST – called Mr. Fudge and asked him to return my call ASAP

8/30/04 – Called Mr. Fudge left message for him to call me, or to direct me to the correct person for help.

       Fax to Consumer Advocate Supervisor

Exhibit 1 shows that the next communication from a creditor entity came September 20, 2004. It was a facsimile with a cover sheet under the letterhead "**SPS/SELECT *Portfolio* SERVICING, *inc.*** " It was identified as "Dispute Response from Walter Fudge". The cover sheet showed the documents were transmitted September 20, 2004. The "response" was another unsigned letter dated June 15, 2004, purportedly from "Walter G. Fudge Jr.", this time identified as "<u>Customer Advocate</u>", on the Fairbanks letterhead and again stating the Jacksonville address.

The text of the document states that "servicing" was transferred to Fairbanks April 1, 2002. The document contended that an unpaid balance of $4,194.26 was still owed on the loan due to interest accruals applied by the "the prior servicer" on the loan. The unsigned letter does not identify the "prior servicer" by name or explain its relationship with the loan contract and/or mortgage

8

between the original creditor NationsCredit and the Hankses.

The letter informed Whitehurst that "we" would refuse to file a satisfaction of mortgage until the claimed $4,194.26 was paid:

> We are unable to file a Satisfaction of Mortgage prior to the loan being paid in full. Currently the account has a $4,194.26 unpaid principal balance. Once the account has been paid in full, the Satisfaction of Mortgage will be filed with the required county for recording and the final Satisfaction of Mortgage will be mailed to the customer.          .

The letter stated that a request "has been submitted" to its "Payoff Department" to provide Whitehurst with a free copy of the payoff figures. The letter also stated that this would take another week, to a week-and-a half.

The last document in Plaintiffs' Exhibit 1 is a copy of Whitehurst's September 24, 2004 letter, this time addressed to a named individual, "Ms. Katherine Manning, Select Portfolio Servicing, Inc., P.O. Box 65250, Salt Lake City, UT 84165-0250". The letter stated the following:

> I am enclosing a copy of my previous letter concerning this loan with the attachments. I am also enclosing the response from Walter Fudge that was only received this week. Finally, I am enclosing a copy of my letter today and the proposed complaint.

> If you need anything further, please contact me.

On October 5, 2004, Whitehurst, on the debtors' behalf, filed the complaint commencing this adversary proceeding (AP 04-70072). It asked this Bankruptcy Court to hold Select Portfolio Servicing, Inc. (formerly known as Fair Banks Capital Corp., according to the complaint) in contempt of this court's 11 U.S.C. § 524 discharge order for its collection attempts, including its refusal to release the mortgage recorded against the real estate.

The plaintiffs requested sanctions for the alleged misconduct, including payment of their attorneys fees and expenses; and damages for their losses and mental anguish. The plaintiffs  asked

9

the court to enjoin the creditor from further collection efforts against them and:

> Order the Defendant to establish reasonable procedures to prevent future violations of discharge orders in its mortgage loan collection system. This includes establishing procedures to identify what mortgage loans are discharged, establishing procedures that will require prompt release of mortgage liens and discontinuance of collection efforts.

The Bankruptcy Clerk's Office issued the summons on Select Portfolio Service, Inc. October 5, 2004, setting a November 4, 2004 deadline for its answer. (AP Doc. 2) The record reflects that the summons service was executed on defendant SPS on October 14, 2004. (AP Doc. 6).

Plaintiffs' Exhibit 2 shows that Whitehurst's office received another communication from SPS dated October 15, 2004. It was also in letter form (with attachments) and appears to be signed (not legibly to the court) over the typed name of "David Hartzell" "Customer Advocate". Although this message is on the SPS business letterhead/logo, the address at the bottom of page one is the street number and post office box mailing address seen on the communication over "Walter G. Fudge Jr.'s" name under the Fairbanks Capital Corp. letterhead. It is also the post office box where the trustee mailed the Hankses' payments.  (See bankruptcy document #34).   It stated:

> As your original correspondence dated March 25, 2004 was addressed to NationsCredit, the following information is provided. Fairbanks Capital Corp. acquired the servicing rights for the Hankses' account from NationsCredit Financial Services Corporation on April 1, 2002. Please note that the correct loan number of 7001661425 remained the same. Effective July 1, 2004, Fairbanks Capital Corp. changed its name to Select Portfolio Servicing, Inc. (SPS). Although our name is new, the company that services the Hankses' account has not changed. The payment address and toll free numbers remain the same.

The letter did not mention the lawsuit, and again refused to satisfy the mortgage.  It made various responses to Whitehurst's allegations.  The letter referred the debtors to numerous different SPS departments with numerous different telephone numbers in at least 3 different cities in 3 states for definitive information on different aspects of the 2-page contract/note.

10

This post lawsuit communication included a document labeled a SPS "Payoff Quote" issued June 22, 2004, of $5,452.24 including the $4,194.26 principal balance, interest calculated to July 8, 2002 (when the Chapter 13 trustee made the last plan payment), "Escrow/Impound Advance Balance, Unpaid Late Charges, Funds Advanced on Borrower's Behalf, and Recording Fee, for a total balance due of $5,452.24 as of July 8, 2004. The document noted that the figure would expire July 8, 2004. The document also said SPS would continue to charge $1.17 a day in interest, and a 50-cents per month late charge. The correspondence dated October 15, 2004, stated:

> As stated in our response dated June 15, 2004, we are unable to file a Satisfaction of Mortgage prior to the loan being paid in full.

Nevertheless, SPS did not file an answer to the adversary complaint as of November 4, 2004, nor did it do so thereafter.

On December 7, 2004, the Hankses filed an application for entry of default in this lawsuit (AP Doc. 7), stating that CPS had filed no answer or other responses as required by the Federal Rules of Bankruptcy Procedure. The Bankruptcy Clerk's Office entered the default on December 9, 2004 (AP Doc. 8). The defendant did not respond to AP Docs. 7 or 8.

The court signed and entered a default judgment/rule to show cause on February 8, 2005 (AP Doc. 11) ordering CPS to appear at a March 17, 2005 hearing to show cause why it should not be held in contempt.

March 17, 2005, the debtors and counsel appeared for the hearing and offered both documentary evidence and testimony as to the allegations in the complaint. SPS failed to appear March 17, 2005, nor did it respond to the court's order or defend against the plaintiffs' allegations in any other way. The archived file of BK 97-72646 was not available to the court on the hearing date.

11

The bankruptcy file was later retrieved and reviewed by the court before its final decision.

The court made certain oral findings of fact from the bench and noted some provisions of the Bankruptcy Code as well. This memorandum includes a memorialization and expansion on the record facts; and final conclusions of law on the dispute.

## CONCLUSIONS OF LAW

This court has jurisdiction of Terry Jerome and Sandranetta Hankses' Chapter 13 case pursuant to 28 U.S.C. § 1334(a). The court has jurisdiction of this contempt-of-court/sanctions action, a core bankruptcy proceeding arising under 11 U.S.C. §§ 524(a) and 105(a), pursuant to 28 U.S.C. § 1334(b). Jurisdiction is referred to this Bankruptcy Court by the General Order of Reference of the United States District Courts for the Northern District of Alabama, signed July 16, 1984, As Amended July 17, 1984.

### I.

### The Eleventh Circuit Court of Appeals has held bankruptcy courts have both inherent and statutory authority to enforce their discharge injunctions.

A debtor's discharge order operates as an injunction against subsequent attempts to enforce the discharged debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2) provides the following:

(a) A discharge in a case under this title –

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; ...

As noted by the Eleventh Circuit Court of Appeals in two related 1996 opinions, bankruptcy courts have both inherent powers to punish violations of their orders and a special statutory empowerment in 11 U.S.C. § 105(a). One of the cases involved alleged violation of the discharge

12

injunction; the other, alleged violation of the stay. In both, the appeals court elected to use the specific statutory authority under Section 105(a). That rule was first stated in <u>Jove Engineering, Inc.v. Internal Revenue Service</u> (<u>In re Jove Engineering, Inc.</u>), 92 F.3d 1539, 1554 (11th Cir. 1996), involving violation of the Section 362 stay.

Less than two months later, the court restated the principle in <u>Hardy v. United States</u> (<u>In re Hardy</u>), 97 F.3d 1384 (11th Cir. 1996), involving violation of the Section 524 discharge injunction. In making these decisions, the appeals court relied heavily on <u>International Union, United Mine Workers of America v. Bagwell</u>, 512 U.S. 821 (1994). <u>See also</u> <u>Lucre Management Group, L.L.C. v. Schempp Real Estate, L.L.C.</u> (<u>In re Lucre Management Group, L.L.C.</u>), 365 F.3d 874 (10th Cir. 2004) and <u>Armstrong v. Rushton</u> (<u>In re Armstrong</u>), 304 B.R. 432 (10th Cir. BAP 2004);  and <u>In re Arnold</u>, 206 B.R. 560 (Bankr. N.D. Ala. 1997)(court levied damages, including $15,000.00 in punitive damages under court's inherent powers on finding of bad faith, malevolent intent).

The appeals court stated:

> The Supreme Court has warned that a court must "exercise caution in invoking its inherent power," stating:
>
>> Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. ... [W]hen there is a bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.
>
> _____ <u>Chambers v. NASCO, Inc.</u> 501 U.S. 32, 44-45, (1991).

> Instead of grounding liability for violation of the permanent stay in the court's inherent contempt powers and § 524, we exercise the caution recommended by the Court in <u>Chambers</u> and rely on the other available avenue for relief, statutory contempt powers under § 105.

13

<u>Hardy</u>, 97 F.3d at 1390.

11 U.S.C. § 105(a) itself provides the following:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

The Internal Revenue Service was the defendant in both <u>Jove</u> and <u>Hardy</u>. In the latter case, the plaintiff Hardy had paid IRS the full $11,640.99 amount of its allowed claim before he was discharged of his debts April 5, 1991. After receiving its copy of the discharge order, IRS nevertheless attempted to collect $4,109.31 of the debt. Despite contacts from the debtor's attorney, the agency levied on the former debtor's bank account. It then sent an agent to his home who collected a $3,465.61 payment to "settle" the debt. Nevertheless, the IRS filed another levy in an attempt to collect. The debtor sued for damages under Sections 524(a)(2) and 105(a).

The court also discussed liability under Section 105 in <u>Hardy</u>:

While a defendant may by cited for contempt under the court's inherent powers only upon a showing of "bad faith," <u>Mroz</u>, 65 F.3d at 1575, IRS may be liable for contempt under § 105 if it <u>willfully</u> violated the permanent injunction of § 524. <u>Jove</u>. 92 F.3d at 1553-54, <u>see</u> <u>Havelock v. Taxel</u> (<u>In re Pace</u>), 67 F.3d 187, 193 (9th Cir. 1995). This court has stated that "the focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." <u>Howard Johnson Co. V. Khimani</u>, 892 F.2d 1512, 1516 (11th Cir. 1990) (quoted in <u>Jove</u>, 92 F.3d at 1554). In <u>Jove</u>, this court adopted a two-pronged test to determine willfulness in violating the automatic stay provision of § 362. Under this test the court will find the defendant in contempt if it: "(1) knew that the automatic stay was invoked and (2) intended the actions which violated the stay." <u>Jove</u>, 92 F.3d at 1555. This test is likewise applicable to determining willfulness for violations of the discharge injunction of § 524.

<u>Hardy</u>, 97 F.3d at 1390.

The Eleventh Circuit court emphasized that the bankruptcy court could only levy sanctions

Case 04-70072-CMS    Doc 14    Filed 07/07/05    Entered 07/07/05 14:13:45    Desc Main
Document    Page 14 of 23

for contempt as a civil remedy, not the punitive sanctions available only in criminal contempt cases:

> The court may only impose sanctions for contempt that are coercive and not punitive, <u>Jove</u>, 92 F.3d at 1557-58. In determining whether a sanction for contempt is coercive, the court must ask "(1) whether the award directly serves the complainant rather than the public interest and (2) whether the contemnor may control the extent of the award." <u>Id</u>. If the court finds, as in <u>Jove</u>, that the appellant primarily seeks monetary damages in the form of a fixed non-compensatory fine, then the court may not order such monetary damages, as they are punitive and not coercive.

<u>Hardy</u>, 97 F.3d at 1390.

Generally, to establish a case for civil contempt, the plaintiff must prove by "clear and convincing" (not a preponderance of) evidence that a valid court order was violated. <u>See</u> <u>Jove</u>, 92 F.3d at 1545.

In order to determine if SPS violated a valid order of the court, the court must analyze the relation of the parties prepetition, during the term of the confirmed plan, and after the debtors completed their plan and were discharged.

## II.

### <u>Chapter 13 debtors can modify the rights of secured creditors,</u><br><u>including those secured by non-homestead real estate.</u><br><u>They may choose to accelerate the debts to pay them out through their plans;</u><br><u>or they may maintain payments as long-term debt enforceable after discharge.</u>

With certain exceptions, the Bankruptcy Code allows Chapter 13 debtors to modify the non-bankruptcy law rights of secured creditors. As public policy, Chapter 13 attempts to give debtors an incentive to pay at least part of their debts during a reorganization, rather than filing for a Chapter 7 liquidation. The applicable provisions attempt to balance the debtor's Chapter 13 "fresh start" with the interest of creditors, while protecting the asset distribution system created by Congress.

Many Chapter 13 debtors have secured debts encumbering real estate, residential and

otherwise; and encumbering personal property in which the terms of the loan extend beyond the maximum 60 months allowed for completion of a Chapter 13 reorganization. The Bankruptcy Code gives debtors options for these debts which are unavailable under state or other non-bankruptcy law. 11 U.S.C. § 1322 which sets both mandatory and permissive contents for Chapter 13 debtors' reorganization plans, contains some of those options.

Section 1322(a) requires that the plan "shall": (1) submit all the debtors' disposable income to the trustee for distribution to creditors; (2) provide for the full payment in deferred cash payments of all priority payments under section 507; and (3) if the plan classifies claims, provide the same treatment for each claim in a particular class. Section 1322(b) then provides 10 actions that the plan "may" do. For example, 11 U.S.C. §§ 1322(b)(2) and (5) provide the following:

> (b) Subject to subsections (a) and ( c ) of this section, the plan may–
>
>> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; ...
>>
>> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; ...

These sections provide a debtor two choices for long-term debt secured by non-homestead real estate. He or she may "cure" prepetition arrearage while continuing regular payments to the creditor as long-term debt under Section 1322(b)(5). Or he or she can modify the terms of the contract under Section 1322(b)(2), accelerate the debt, and pay the allowed, secured claim in full during the plan. The debtors in this case chose the second option of modifying the terms of the mortgage under 1322(b)(2), rather than curing and maintaining the mortgage payments under Section 1322(b)(5). The

Case 04-70072-CMS    Doc 14    Filed 07/07/05    Entered 07/07/05 14:13:45    Desc Main
Document      Page 16 of 23

debtors chose this same option in the case of <u>Homebanc, Incorporated v. Chappell (In re Chappell)</u>, 984 F.2d 775, 780 (7th Cir. 1993). The court in <u>Chappell</u> at page 780 stated:

> The language of section 1322(b)(5) is discretionary, and a debtor may choose to treat a long-term debt in accordance with its terms. <u>See</u> <u>Education Assistance Corp. v. Zellner</u>, 827 F.2d 1222, 1226 (8th Cir. 1987) ("A debtor may, but is not required to, provide for his long-term debts by using this provision.") <u>In re Ali</u>, 63 B.R. 591.593 (Bankr. E.D. Wis. 1986) (stating that the section is permissive in nature). Pursuant to that section "[n]ot all long-term debts are entitled to be excepted from discharge ... but only those debts which the debtor wishes to continue treating as long-term debts." <u>In re Smith</u>, 8 B.R. 543, 547 (Bankr. D. Utah 1981).

<u>See</u> <u>also</u> <u>Holloway v. Southeast Alabama Medical Center (In re Holloway)</u>, 261 B.R. 490 ( M.D. Ala. 2001) and <u>Zabel v. Schroeder Oil, Inc.</u> (<u>In re Zabel</u>), 249 B.R. 764 (Bankr. E.D. Wisc. 2000), (both Chapter 12 cases using Chapter 13 precedent; <u>In re Stovall</u>, 256 B.R. 490 (Bankr. N.D. Ill., 1999); and <u>In re James</u>, 285 B.R. 114 (Bankr. W.D. N.Y. 2002) (loan secured by automobile).

Debtors' plan, as filed with their schedules, indicated in paragraph 1 that they were not treating NationsCredit as a long term debt. Paragraph number 2 under "other secured debts" included NationsCredit with a scheduled indebtedness of $14,000.00 to be paid at 10% interest with a fixed payment of $200.00 per month. After the case was confirmed NationsCredit filed claim #6 showing a balance of $12,691.21. The trustee filed a motion to modify the debtors' plan to treat this claim as a long term debt under Section 1322(b)(5) (Bk Doc. 9). NationsCredit was served with a copy of the trustee's motion. The debtor objected to this motion to modify and reiterated that his plan proposed to pay the indebtedness in full at 10% interest at the rate of $255.00 per month as set out in the order of confirmation. (Bk Doc. 10) NationsCredit was also served with this objection. A hearing was held on the trustee's motion and the debtor's objection on February 20, 1998. NationsCredit failed to appear and an order was entered providing that the claim of NationsCredit would be paid in full over a period of 55 months at the rate of $288.60 per month at 10% interest. (Bk Doc. 13) NationsCredit

was served with a copy of this order and failed to appeal.

NationsCredit was clearly on notice that the debtors proposed to pay their claim in full within the term of the plan. NationsCredit had a copy of the debtors' plan, confirmation order, the trustee's motion with the debtors' objection, and the order which was entered following the hearing on the debtor's objection. None of these could have led NationsCredit to believe that the debtor was treating their claim as a long term debt under Section 1322(b)(5).

Pursuant to 1322(b)(2) the debtor chose to pay the claim of NationsCredit over a period of 55 months at an interest rate of 10%, rather than pay NationsCredit as a long term debt under 1322(b)(5) over 84 months at the interest rate of 15.2496% as provided in the note.

1322(b)(2) allows the debtor to modify the rights of NationsCredit. Section 1325 provides that a plan shall be confirmed if certain provisions are made in the plan. 1325(a)(5) provides:

**1325. Confirmation of plan**
(a) Except as provided in subsection (b), the court shall confirm a plan if - ...
(5) with respect to each allowed secured claim provided for by the plan-
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder; and ...

NationsCredit did not object to the plan, but that is not the same as having accepted the plan. So 1325(a)(5)(A) does not apply. The debtor did not surrender the property to the secured creditor, NationsCredit, so 1325(a)(5)(C) does not apply. Therefore, the plan was due to be confirmed if it complied with 1325(a)(5)(B).

The chapter 13 plan summary filed by the debtor with his schedules and dated September 22,

18

1997 provides in II. B. the following:

    II. From the payments received, the Trustee shall make disbursements as follows:
        B. The holder of each SECURED claim shall retain the lien securing such claim until a discharge is granted and such claim shall be paid in full with interest at a rate of 10% per annum in deferred cash payments as follows: ...

(BK Doc. 1)

The plan therefore complied with 1325(a)(5)(B). The confirmation order entered in this case (Bk Doc. 8) further provided "Secured creditors shall retain their liens securing such claim until such time as the filed and allowed claims of such creditor are paid under the terms of debtor's plan and said liens are released upon debtor's completion of the plan as confirmed or, as amended...". No appeal was filed by NationsCredit from this order of confirmation.

    Debtor's plan, as confirmed, complied with the requirements of 1322(b)(2) and 1325(a)(5). Debtor completed all payments under the terms of the confirmation order and received his discharge. The claim of NationsCredit was paid under the terms of the debtor's plan and pursuant to the terms of the confirmation order "said liens are released upon debtor's completion of the plan as confirmed...". NationsCredit asserted no claim for any additional indebtedness due from the debtors after the debtors' plan was confirmed and prior to the entry of the debtors' discharge, a period of almost five years. "A lien on property only exists to secure payment of a specific debt. In re Echevarria, 212 B.R. 26, 28 (Bankr. D.P.R.). aff'd. 212 B.R. 185 (1st Cir. BAP 1997), aff'd. 141 F.3d 1149 (1st Cir. 1998). Liens do not survive bankruptcy where the debt is provided for in the plan and is paid in full. Id." In re Stovall, 256 B.R. 490, 493 (Bankr. E.D. Ill. 1999). See also Chappell, 984 F.2d 775 (7th Cir. 1993).

Case 04-70072-CMS   Doc 14   Filed 07/07/05   Entered 07/07/05 14:13:45   Desc Main Document   Page 19 of 23

**Select Portfolio Services, Inc. violated the 11 U.S.C. Section 524
discharge injunction by continuing to demand payment of a discharged
debt before releasing its lien.**

The bankruptcy court had provided NationsCredit a copy of the confirmation order, the court's order providing that its claim would be paid at 10% interest over 55 months, and a copy of the debtors' discharge when the plan was completed. Select Portfolio Services, Inc., as successor to NationsCredit, was also provided copies of all documents by debtors' attorney on at least two occasions beginning in April, 2004. The confirmation order provided that this lien was released upon completion of the debtors' plan and yet Select Portfolio Services, Inc. refused to release its lien on the debtors' real estate and asserted that it was still owed approximately $5,000.00.

In 1997, the Bankruptcy Court for the Middle District of Alabama, faced an issue similar to that in the Hankses' case. Judge Rodney R. Steele required a mortgagee to file a satisfaction based on the authority of <u>Fed. R. Bankr. P.</u> 7070[5], and <u>Fed. R. Civ. P.</u> 70, as well as Section 105(a). <u>See In</u>

---

[5] **Rule 7070. Judgment for Specific Acts; Vesting Title.**

Rule 70 FR Civ P applies in adversary proceedings and the court may enter a judgment divesting the title of any party and vesting title in others whenever the real or personal property involved is within the jurisdiction of the court.

**Rule 70. Judgment for Specific Acts; Vesting Title.**

> If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party. On application of the party entitled to performance, the clerk shall issue a writ of attachment or sequestration against the property of the disobedient party to compel obedience to the judgment. The court may also in proper cases adjudge the party in contempt. If real or personal property is within the district, the court in lieu of directing a conveyance thereof

re Anderson, 206 B.R. 573, 575 (Bankr. M.D. Ala. 1997). The court was enforcing its own order approving a settlement by which the debtor agreed to pay the mortgagee $12,500.00 during the course of his Chapter 13 plan. In return, the order required the mortgagee to file proper satisfaction documents and to discharge the indebtedness.

The court found the debtor had paid the full amount in his Chapter 13 plan, but that the creditor had failed to file the satisfaction. The creditor also failed to respond to the court's order to show cause, or to the debtor's motion for an accounting. The Bankruptcy Court, after a hearing, gave the mortgagee 30 days to record the documents necessary to clear the title.(The creditor did not appear at the hearing to defend.) The court ordered:

> If James R. Barnes fails to do all acts necessary to satisfy of record the real estate mortgage of the above described real estate in the debtor, then this order shall stand, pursuant to Rule 70 of the Federal Rules of Civil Procedure, incorporated as Rule 7070 of the Bankruptcy Rules, as a judgment satisfying the mortgage of the above described real estate from James R. Barnes in favor of the debtor, Willie James Anderson. This judgment has the effect of conveyance executed in due form of law and is a satisfaction of the mortgage for recommendation purposes.

Anderson, 206 B.R. at 574-75.

11 U.S.C. Section 524 provides the debtor with a post discharge injunction against collection of debts which have been discharged in the bankruptcy case.  Section 524 provides:

> **§ 524.  Effect of discharge**
>   (a) A discharge in a case under this title-
>     (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

---

> may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a conveyance executed in due form of law. When any order or judgment is for the delivery of possession, the party whose favor it is entered is entitled to a writ of execution or assistance upon application to the clerk.

Case 04-70072-CMS    Doc 14    Filed 07/07/05    Entered 07/07/05 14:13:45    Desc Main
Document      Page 21 of 23

and...

The debtor having successfully completed all terms under his plan and having received a discharge, was due to have NationsCredit's lien released. Instead, Select Portfolio Services, Inc. as its successor, demanded in excess of $5,000.00 in order to release a lien which had been discharged pursuant to the court's order and the Bankruptcy Code.

> This court has stated that "the focus of the court's inquiry in civil **contempt** proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complies with the order at issue." Howard Johnson Co. V. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990)(quoted in Jove, 92 F.3d at 1554). In Jove, this court adopted a two-pronged test to determine willfulness in violating the automatic stay provision of § 362. Under this test the court will find the defendant in **contempt** if it: "(1) knew that the automatic stay was invoked and (2) intended the actions which violated the stay." Jove, 92 F.3d at 1555. This test is likewise applicable to determining willfulness for violations of the **discharge injunction** of §524.

Hardy at 1390.

Select Portfolio was aware of the court's confirmation order and order of discharge, having been notified both by the court and by debtors' counsel and provided copies of these orders. Select Portfolio evidenced its intentions to not comply with these orders by its written communications to debtors' counsel demanding payment of a discharged debt before releasing a lien which had been discharged.

## CONCLUSION

The court finds that the Hanks have satisfied their indebtedness to Select Portfolio Services, Inc., as successor to NationsCredit, and that the mortgage recorded in Deed Book 1997 at page 12119 is due to be marked satisfied in the real estate records of Tuscaloosa County, Alabama. The court finds that Select Portfolio Services, Inc. is in contempt of court for continuing to attempt to collect

from the debtors a previously discharged debt and for failing to satisfy the mortgage on debtors' property pursuant to the terms of the confirmation order. The court further finds that the Hanks have incurred attorney fees in prosecuting this action in an undetermined amount and that the attorney for the Hankses shall submit to the court within 14 days an itemized statement reflecting dates of service, nature of service, and time spent for the prosecution of this action.

An order consistent with these findings pursuant to F.R.B.P 7052 will be entered separately.

**DONE and ORDERED** this July 7, 2005.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge

23